## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BIC CORPORATION<br><br>            Plaintiff,<br><br>v.<br><br>ARROW LIGHTER, INC. d/b/a MK LIGHTER, INC. and MK LIGHTER COMPANY, EXCEL WHOLESALE DISTRIBUTORS INC., MILAN IMPORT EXPORT COMPANY, LLC, JOHN DOE COMPANIES 1-10, and JOHN OR JANE DOES 1-10,<br><br>            Defendants. | Case No. _____18-cv-6922_____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff BIC Corporation ("BIC"), by and through its attorneys, and for its Complaint against the Defendants, Arrow Lighter, Inc. d/b/a MK Lighter, Inc. and MK Lighter Company (collectively, "MK"), Excel Wholesale Distributors Inc. ("Excel"), Milan Import Export Company, LLC ("Milan"), John Doe Companies 1-10 and John or Jane Does 1-10 (all collectively, "Defendants").

### NATURE OF THE ACTION

1.      This action is being brought by Plaintiffs to put an end to Defendants' wrongful importation, distribution, advertising, marketing and sale in the United States (including in this District) of pocket lighters that infringe BIC's trade dress.

2.      This is an action for trade dress infringement under Section 32 of the Lanham Act, 15 U.S.C. §§ 1114 (Registered Trademark Infringement); Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as amended (False Designation of Origin); contributory trademark infringement under Section 43 of the Lanham Act, 15 U.S.C. § 1114(1)(a); Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) (Trademark Dilution in Violation of the Federal Trademark

1

Dilution Act); New York Gen. Bus. Law §§ 349-350; New York Gen. Bus. Law § 360-1; and the common law of the State of New York.

## PARTIES

3.      Plaintiff BIC Corporation is a Connecticut corporation, having its principal place of business in Shelton, CT.

4.      Upon information and belief, Defendant MK is a California corporation, having a principal place of business at 13942 E. Valley Blvd., City of Industry, CA 91746.

5.      Upon information and belief, Defendant Excel is a New York Corporation, having a principal place of business at 15-13 132nd Street, College Point, NY 11356.

6.      Upon information and belief, Defendant Milan is a California company, having a principal place of business at 2333 Camino Del Rio South, Suite 120, San Diego, CA 92108.

7.      BIC is currently unaware of the true names and identities of Defendants John Doe Companies 1-10 and John or Jane Does 1-10, but is informed and believes that such persons and entities are liable for the violations alleged in this Complaint.  BIC may seek leave to amend this Complaint at an appropriate time to add specific information regarding these defendants upon determination of their true identities.

## JURISDICTION AND VENUE

8.      This is a civil action arising from Defendants' misuse of BIC's trade dress.  The claims alleged in this Complaint arise under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and under New York state statutory and common law.

9.      This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §§ 1121 and 28 U.S.C. §§ 1331, 1332 and 1338.

10.      This Court has supplemental jurisdiction over BIC's state law claims pursuant to

28 U.S.C. § 1367(a).

11.     Venue is proper in New York pursuant to 28 U.S.C. § 1391(b).

12.     Venue is proper in the Eastern District of New York as, upon information and belief, Defendants have transacted business therein relative to the claims made herein.

13.     This Court has personal jurisdiction over MK as it has sold, marketed, advertised and distributed infringing lighters or otherwise transacted business in the State of New York and this District.

14.     This Court has personal jurisdiction over Excel as it, upon information and belief, is located in the State of New York and has sold, marketed, advertised and distributed infringing goods or otherwise transacted business in the State of New York and this District.

15.     This Court has personal jurisdiction over Milan as it, upon information and belief, has sold, marketed, advertised and distributed infringing lighters or otherwise transacted business in the State of New York and this District.

16.     This Court has personal jurisdiction over John Doe Companies 1-10 as they, upon information and belief, are located in the State of New York, have sold, advertised and marketed infringing goods or otherwise transacted business from the State of New York, and/or conspired with Excel, MK, and/or Milan to engage in such acts in the State of New York and this District.

17.     This Court has personal jurisdiction over John or Jane Does 1-10 as they, upon information and belief, are located in the State of New York, have sold, advertised and marketed infringing lighters or otherwise transacted business from the State of New York, and/or conspired with Excel, MK, and/or Milan to engage in such acts in the State of New York and this District.

## FACTUAL BACKGROUND

*BIC's Trade Dress Rights*

18.    BIC is in the business of manufacturing and distributing high quality and reliable consumer products, including pocket lighters.

19.    For over 45 years, and well before the acts of Defendants identified herein, BIC has used distinctive source-identifying product configurations—collectively referred to hereinafter as the "Trade Dress"—to indicate the origin of its pocket lighters.  These configurations incorporate the following trade dress, which is registered as of 1993 and 1999, respectively, and has incontestable status with the United States Patent and Trademark Office ("USPTO"):



a.              , Reg. No. 1,761,622, registered with the USPTO in connection with "cigarette lighters not made of precious metals," with a date of first use at least as early as 1973.  A true and correct copy of the registration certificate for this mark is attached hereto as Exhibit 1.



b.              , Reg. No. 2,278,917, registered with the USPTO in connection with "cigarette lighters not made of precious metals," with a date of first use

4

at least as early as 1995.  A true and correct copy of the registration certificate for this mark is attached hereto as Exhibit 2.

20.    As set forth in these registrations, BIC's Trade Dress constitutes a lighter having:

- an oblong body which is elliptical in cross-section;

- a fork which is generally parabolic in cross-section; and

- a hood (the metal portion at the top of the lighter) which is generally parabolic in cross-section.

21.    BIC's famous product configuration also incorporates:

- a solid colored opaque body (around which a decorative sleeve wrap may also be placed);

- a silver metal hood;

- a red pusher;

- branding on the silver metal hood; and

- branding directly beneath the metal hood and red pusher.

22.    A photograph of BIC products incorporating the BIC Trade Dress is set forth below.

**BIC® Pocket Lighters Incorporating the Trade Dress**



23.     The Trade Dress has been in continuous and substantially exclusive use for over 45 years.  In addition, the Trade Dress has been and continues to be the subject of the expenditure of tens of millions of dollars in promotion and advertising in various media in the United States, including the nationally famous "Flick Your BIC®" advertising campaign.  As a result, the Trade Dress is recognized as an indicator of source for BIC's high-quality and pioneering lighters and is the embodiment of the substantial and valuable goodwill associated with BIC's products.

24.     BIC has vigilantly enforced the rights in its Trade Dress, including through civil actions brought in federal court.

25.     As a result of BIC's substantial efforts, and prior to the acts of Defendants alleged herein, the Trade Dress has become famous in the minds of consumers as a designation of source for BIC's goods.

26.     BIC is unquestionably the market leader in sales of pocket lighters in the United States, selling hundreds of millions of pocket lighters each year.  BIC's extensive sales and position as the number one seller of pocket lighters in the United States have earned it

tremendous consumer awareness, with nearly 90% of all pocket lighter users report having used a BIC® lighter in the past 3 months.

27.     Social media pages for BIC's pocket lighters draw substantial attention from the public, with over 1.4 million Facebook users and nearly 100,000 Instagram users following BIC's online promotion of pocket lighters bearing the famous Trade Dress.

28.     So familiar is BIC's Trade Dress in the minds of the general public in the United States that it has been referenced frequently in literature and throughout pop culture.  Authors specifically mention the BIC® lighter in their work since it will conjure an image in the mind of their audience of BIC's famous and distinctive Trade Dress.

29.     The iconic status of BIC's Trade Dress is further confirmed by its display at exhibitions at museums, including the Museum of Modern Art ("MoMA") in New York and the Pompidou Centre in Paris, France, as an example of iconic designs of the 20th century.

30.     Since February 2005, MoMA's Department of Architecture and Design—the world's first curatorial department devoted to architecture and design—has featured BIC's pocket lighters incorporating its famous Trade Dress in its collection.

31.     From December 23, 2009 to July 24, 2010, MoMA featured BIC's pocket lighter incorporating the iconic BIC Trade Dress in its "Shaping Modernity: Design 1880-1980" exhibition.  According to MoMA, the exhibition's purpose was to highlight "a selection of visionary objects, graphics, architectural fragments, and textiles from the Museum's collection that reveal the attempts of successive generations to shape their experience of living in the modern world."  Upon information and belief, BIC's pocket lighters were chosen precisely because their famous Trade Dress has been a distinctive part of modern life for over 45 years.

32.     The distinctive Trade Dress does not serve any function other than to identify BIC

as the source of its pocket lighters.  The configuration of the lighters is purely aesthetic, and is

not optimal in terms of engineering, economy of manufacture, or accommodation of utilitarian

function.  There are many non-infringing, non-dilutive designs available for others to use, so no

competitor has a legitimate need to use the Trade Dress in order to manufacture and sell a pocket

lighter.  Indeed, several other manufacturers of pocket lighters compete successfully in the

pocket lighter market without copying the unique product configuration of BIC® pocket lighters.

**DEFENDANTS' UNLAWFUL ACTS**

33.     Upon information and belief, at least over 40 years after BIC began using its

famous and distinctive Trade Dress, Defendants began importing, distributing, advertising,

marketing, offering for sale, and/or selling in the United States lighters that incorporate BIC's

Trade Dress in a blatant, willful, and knowing attempt to trade off the goodwill that BIC has

developed.

34.     A photograph of Defendant MK's "MK grip Series" lighter reveals the substantial

similarity in design:

**Defendant MK's "Grip Series" Pocket Lighter**

35.     Defendant MK is also marketing a miniature version of the "grip Series" lighter—

the "mini-grip Series"—which is substantially similar to BIC's registered lighter configuration

8

Trade Dress as embodied in the lighters currently sold and distributed by BIC.  A photograph of the miniature version of Defendant MK's lighters is below:

**Defendant MK's "Mini-Grip Series" Pocket Lighter**



36.      Further, upon information and belief, Defendant MK is marketing and intends to sell another, even more blatant knock-off incorporating BIC's Trade Dress.  Defendant, upon information and belief, is marketing lighters incorporating BIC's Trade Dress on MK's website. Defendant MK markets these lighters as the "MK dura-lite Series," and describes them as "Classic Disposable Lighters" having a "Classic design."  A true and correct copy of the MK webpage featuring this lighter is attached as Exhibit 3.  A photograph of the MK dura-lite Series lighter Defendant MK markets and intends to sell is below:

**Defendant MK's "Dura-Lite Series" Pocket Lighters**



37.     Defendant MK's "Grip Series," "Mini-Grip Series," and "Dura-Lite Series" lighters have a product configuration that is substantially similar to BIC's famous Trade Dress. As with BIC's lighters, Defendants' lighters have:

- an oblong body which is elliptical in cross-section;

- a fork which is generally parabolic in cross-section; and

- a hood which is generally parabolic in cross-section.

38.     Defendant MK's product configuration for its "Grip Series," "Mini-Grip Series," and "Dura-Lite Series" lighters creates a confusingly similar commercial impression to the BIC Trade Dress.  Further exacerbating this confusingly similar commercial impression, Defendant MK's product configuration for its lighters also features the following elements of BIC's product configuration:

- a solid colored opaque body (around which a decorative sleeve wrap may also be placed);

- a silver metal hood;

- a red pusher;

- branding on the silver metal hood; and

- branding directly beneath the metal hood and red pusher.

39.     Upon information and belief, Defendant MK chose these product configurations for its "Grip Series," "Mini-Grip Series," and "Dura-Lite Series" lighters to exploit and trade on the longstanding goodwill, reputation, and success of BIC's products featuring the famous Trade Dress, and to create a likelihood of consumer confusion in the marketplace.

40.     Further enhancing the confusing similarity with BIC's products, MK distributes to customers a Material Safety Data Sheet that, upon information and belief, copies verbatim the information from BIC's Material Safety Data Sheet with regard to hazard identifications,

composition/information on ingredients, safety procedures, and the various properties of the pocket lighters.

41.     Upon information and belief, MK has previously been involved in litigation in the United States (*Clemmer v. Zhuoye Lighter Manufacturing Co. Ltd.*, 09-cv-02113 (N.D. Tex. 2009)) wherein the family of a Texas man alleged that the unsafe nature of MK lighters caused his death.

42.     Upon information and belief, MK's Chinese affiliate Zhuoye Lighter Manufacturing Co, Ltd. never appeared in that litigation, and MK's predecessor company in the United States paid a settlement and subsequently went defunct, at which point MK was incorporated.

43.     Defendant MK, upon information and belief, is now manufacturing lighters with similarly unsafe features that are dangerous for use by the consuming public.  Defendant MK's actions thus, upon information and belief, present significant public health and safety concerns.

44.     Upon information and belief, MK's affiliate Zhuoye Lighter Manufacturing Co, Ltd. manufactures the infringing lighters in China.

45.     Upon information and belief, MK imports the infringing lighters into the United States, where they are then distributed, advertised, marketed, offered for sale and sold in the United States.

46.     Upon information and belief, Defendants MK and Excel have advertised, marketed, offered for sale and sold infringing MK lighters throughout the United States and within this District.  *See* Exhibits 3 and 4.

47.     A photograph of Defendant Milan's "TuTu" lighter also reveals a substantial similarity in design with BIC's iconic Trade Dress.

11

**Defendant Milan's "TuTu" Pocket Lighters**



48.     Defendant Milan's lighters have a product configuration that is substantially similar to BIC's famous Trade Dress.  As with BIC's lighters, Defendant Milan's lighters have:

- an oblong body which is elliptical in cross-section;

- a fork which is generally parabolic in cross-section; and

- a hood which is generally parabolic in cross-section.

49.     Defendant Milan's product configuration for its lighters creates a confusingly similar commercial impression to the BIC Trade Dress.  Further exacerbating this confusingly similar commercial impression, Defendant Milan's product configuration for its lighters also features the following elements of BIC's product configuration:

- a solid colored opaque body (around which a decorative sleeve wrap may also be

placed);

- a silver metal hood;

- a red pusher;

- branding on the silver metal hood; and

- branding directly beneath the metal hood and red pusher.

50.    Upon information and belief, Defendant Milan chose these product configurations for its lighters to exploit and trade on the longstanding goodwill, reputation, and success of BIC's products featuring the famous Trade Dress, and to create a likelihood of consumer confusion in the marketplace.

51.    Upon information and belief, Defendant Milan knows or has reason to know that it, unlike BIC, does not own any trade dress rights in the shape of its lighter.

52.    On January 14, 2015, Milan filed application Serial No. 86/503,549 with the USPTO to register the product configuration of its infringing pocket lighters.  On April 26, 2015, an Examiner for the USPTO refused registration on the basis of BIC's registered Trade Dress, U.S.  No. 1,761,622, citing a likelihood of confusion between the configuration of Milan's pocket lighters and BIC's iconic Trade Dress.

53.    Milan responded to the Office Action on July 14, 2015, arguing that purported differences between Milan's and BIC's pocket lighters (namely, the Milan lighter's single flat edge and heart-shaped hole) were sufficient for consumers to distinguish them.  The Examiner rejected Milan's argument and made the refusal of registration final on August 28, 2015, noting that "[t]he similarity of the configuration of the lighters is striking" and that the purported "differences are slight and not enough to distinguish source."

54.    Milan did not respond to the final Office Action and the USPTO issued a notice that the application was abandoned on March 31, 2016.

55.     Upon information and belief, Defendant Milan imports the infringing lighters into the United States, where they are then distributed, advertised, marketed, offered for sale and sold in the United States.

56.     Upon information and belief, Defendant Milan has advertised, marketed, offered for sale, and sold infringing TuTu lighters throughout the United States and within this District. A true and correct copy of a webpage featuring these lighters for sale in the United States is attached as Exhibit 5.

57.     Upon information and belief, Defendants' lighters and BIC's lighters compete and are offered in identical channels of trade.

58.     In light of the fact that BIC® pocket lighters have been sold for over 45 years and have gained widespread recognition and praise, upon information and belief, Defendants deliberately copied the Trade Dress.  Defendants' lighters are sold to the same types of customers through the same or similar channels of trade as those used by BIC, but at a substantially lower price than that of genuine BIC® pocket lighters.  Because of the similarity in appearance between BIC® pocket lighters and Defendants' lighters and the strong likelihood of confusion, even the price difference is insufficient to foreclose the likelihood of confusion.

59.     The fact that the infringing lighters with confusingly similar appearance are offered at lower price points than BIC® pocket lighters contributes to the substantial injury to BIC's brand equity and reputation.

60.     Consumers of pocket lighters are not likely to exercise great care at the point of purchase or in post-sale exposure and are thus likely to believe that Defendants' lighters are BIC® lighters or that Defendants' lighters are sponsored by BIC and/or affiliated, connected, or associated with BIC.

61.     Even more sophisticated consumers are likely to experience confusion regarding the source, affiliation, sponsorship, or association of Defendants' infringing products when confronted with promotions and sales of the infringing products.  BIC's pocket lighters are sold to end user consumers at points of sale where consumers are often buying other products and frequently purchase pocket lighters impulsively.  Minor differences in product configuration are not likely to make an impact on the typical end user or to impact their purchasing decision.

62.     BIC's use of its famous Trade Dress long predates Defendants' use of its product configurations on its lighters and, upon information and belief, Defendants' trade dress infringement is willful.

63.     Defendants had constructive knowledge of BIC's Trade Dress based on BIC's federal trademark registrations.

64.     Upon information and belief, Defendants engaged in these acts with the knowledge of BIC's rights and the willful intent to violate same.

65.     Defendants' unlawful actions are having, and will continue to have, a substantial and adverse effect on United States commerce.

66.     Unless permanently enjoined, Defendants' wrongful acts and/or willful infringements have caused, and will continue to cause, irreparable harm to BIC, such as loss of control to its reputation and loss of substantial consumer goodwill, for which BIC has no adequate remedy at law.

67.     Defendants are profiting and will continue to profit from their unlawful actions.

68.     Defendants' actions are causing and will continue to cause BIC monetary damage in amounts presently unknown but to be determined at trial.

## FIRST CLAIM FOR RELIEF
## Federal Trademark Infringement
## Lanham Act § 32, 15 U.S.C. § 1114(1)(a), § 1116

69.     BIC repeats, reiterates and re-alleges each and every allegation contained in

Paragraphs 1 through 68 hereof as if fully set forth herein.

70.     BIC Corporation is the owner and registrant of the Trade Dress.

71.     Defendants' uses of the Trade Dress, without BIC's authorization or consent,

have caused and/or are likely to cause confusion or mistake, or to deceive consumers regarding

the source, sponsorship and/or affiliation of the goods imported, offered and sold by Defendants.

72.     Defendants have acted willfully and deliberately and have profited and been

unjustly enriched by sales they would not otherwise have made but for their unlawful conduct.

73.     By virtue of the foregoing, Defendants have caused BIC to suffer injuries for

which it is entitled to recover compensatory damages including, but not limited to, BIC's lost

profits.

74.     Defendants' acts are causing and continue to cause BIC irreparable harm in the

nature of loss of control over its reputation and loss of substantial consumer goodwill.  This

irreparable harm to BIC will continue, without any adequate remedy at law, unless and until

Defendants' unlawful conduct is enjoined by this Court.

75.     BIC has been and will continue to be harmed by Defendants' conduct in an

amount to be determined at trial.

76.     Defendants' acts constitute trademark infringement under Section 32 of the

Lanham Act, 15 U.S.C. § 1114(1)(a).

**SECOND CLAIM FOR RELIEF**
**Federal False Designation of Origin**
**Lanham Act § 43(a), 15 U.S.C. § 1125(a)**

77.     BIC repeats, reiterates and re-alleges each and every allegation contained in
Paragraphs 1 through 68 hereof as if fully set forth herein.

78.     BIC is the owner and registrant of the Trade Dress.

79.     By their unauthorized uses of the Trade Dress, Defendants have falsely designated
the origin of their products and have competed unfairly with BIC, in violation of Section 43(a) of
the Lanham Act, 15 U.S.C. § 1125(a).

80.     Defendants have acted willfully and deliberately and have profited and been
unjustly enriched by sales they would not otherwise have made but for their unlawful conduct.

81.     By virtue of the foregoing, Defendants have caused BIC to suffer injuries for
which it is entitled to recover compensatory damages including, but not limited to, BIC's lost
profits.

82.     Defendants' acts are causing and continue to cause BIC irreparable harm in the
nature of loss of control over its reputation and loss of substantial consumer goodwill.  This
irreparable harm to BIC will continue, without any adequate remedy at law, unless and until
Defendants' unlawful conduct is enjoined by this Court.

83.     BIC has been and will continue to be harmed by Defendants' conduct in an
amount to be determined at trial.

84.     Defendants' acts constitute false designation of origin and unfair competition
under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

### THIRD CLAIM FOR RELIEF
### Contributory Trademark Infringement
### Lanham Act § 43, 15 U.S.C. § 1114(1)(a)

85.     BIC repeats, reiterates and re-alleges each and every allegation contained in Paragraphs 1 through 68 hereof as if fully set forth herein.

86.     BIC Corporation is the owner and registrant of the Trade Dress.

87.     Defendants have provided or caused to be provided to retailer and/or distributor customers lighters bearing the Trade Dress with knowledge, expectation and/or intention that the retailers and/or distributors would use the Trade Dress in connection with the sale of such lighters.

88.     Defendants and their retailer and/or distributor customers have not been granted any right to use the Trade Dress in the United States.

89.     The unauthorized uses of the Trade Dress by retailers and/or distributors supplied by Defendants have caused and/or are likely to cause confusion or mistake, or to deceive consumers regarding the source, sponsorship and/or affiliation of the goods imported, offered and sold by retailers and/or distributors supplied or caused to be supplied by Defendants.

90.     Defendants have intentionally induced or contributed to or knowingly participated in the infringement of BIC's rights in the Trade Dress by Defendants' retailer and distributor customers.

91.     Defendants have acted willfully and deliberately and have profited from the infringement of BIC's rights in the Trade Dress by Defendants' retailer and distributor customers.

92.     By virtue of the foregoing, Defendants have caused BIC to suffer injuries for which it is entitled to recover compensatory damages including, but not limited to, BIC's lost

profits.

93.     Defendants' acts are causing and continue to cause BIC irreparable harm in the nature of loss of control over its reputation and loss of substantial consumer goodwill.  This irreparable harm to BIC will continue, without any adequate remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

94.     BIC has been and will continue to be harmed by Defendants' conduct in an amount to be determined at trial.

95.     Defendants' acts constitute contributory trademark infringement, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1114(1)(a).

### FOURTH CLAIM FOR RELIEF
### Federal Dilution
### Lanham Act § 43(c), 15 U.S.C. § 1125(c)

96.     BIC repeats, reiterates and re-alleges each and every allegation contained in Paragraphs 1 through 68 hereof as if fully set forth herein.

97.     BIC Corporation is the owner and registrant of the Trade Dress.

98.     The Trade Dress is famous within the meaning of the law, and was famous prior to the acts committed by Defendants discussed herein.

99.     Defendants have not been granted any right to use the Trade Dress in the United States.

100.    Defendants' uses of the famous Trade Dress, without BIC's authorization or consent, injure BIC's business reputation and have diluted and/or are likely to dilute the distinctive qualities of the Trade Dress.

101.    Defendants have acted willfully and deliberately and have profited and been unjustly enriched by sales they would not otherwise have made but for their unlawful conduct.

102.    By virtue of the foregoing, Defendants have caused BIC to suffer injuries for which it is entitled to recover compensatory damages including, but not limited to, BIC's lost profits.

103.    Defendants' acts are causing and continue to cause BIC irreparable harm in the nature loss of control over its reputation and loss of substantial consumer goodwill.  This irreparable harm to BIC will continue, without any adequate remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

104.    BIC has been and will continue to be harmed by Defendants' conduct in an amount to be determined at trial.

105.    Defendants' acts constitute trademark dilution, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(c).

## FIFTH CLAIM FOR RELIEF
### Common Law Trademark Infringement and Unfair Competition

106.    BIC repeats, reiterates and re-alleges each and every allegation contained in Paragraphs 1 through 68 hereof as if fully set forth herein.

107.    BIC, at great expense and effort, has acquired a property interest in the State of New York in the Trade Dress in connection with their goods.

108.    Defendants have not been granted any right to use the Trade Dress in the State of New York or any other state in the United States.

109.    Defendants' use of the Trade Dress has caused and/or is likely to cause confusion or mistake, or to deceive consumers regarding the source, sponsorship and/or affiliation of the goods imported, offered and sold by Defendants.

110.    Defendants' conduct is an attempt to wrongfully profit from the expense, effort and reputation of BIC within the State of New York.

111.     Defendants have acted willfully and deliberately and have profited and been unjustly enriched by sales they would not otherwise have made but for their unlawful conduct.

112.     By virtue of the foregoing, Defendants have caused BIC to suffer injuries for which it is entitled to recover compensatory damages including, but not limited to, BIC's lost profits.

113.     Defendants' acts are causing and continue to cause BIC irreparable harm in the nature of loss of control over its reputation and loss of substantial consumer goodwill.  This irreparable harm to BIC will continue, without any adequate remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

114.     BIC has been and will continue to be harmed by Defendants' conduct in an amount to be determined at trial.

115.     Defendants' acts constitute trademark infringement and unfair competition, in violation of the common law of the State of New York.

**SIXTH CLAIM FOR RELIEF**
**Deceptive Practices and False Advertising**
**New York Gen. Bus. Law §§ 349-350**

116.     BIC repeats, reiterates and re-alleges each and every allegation contained in Paragraphs 1 through 68 hereof as if fully set forth herein.

117.     BIC Corporation is the owner and registrant of the Trade Dress.

118.     Defendants' uses of the Trade Dress in connection with its goods, without the authorization or consent of BIC, are likely to cause confusion and mistake and to deceive consumers as to the source or origin of Defendants' products such that consumers may believe that Defendants' lighters are sponsored by, endorsed by, approved by, licensed by, authorized by, or affiliated or connected with BIC.

119.    Defendants have acted willfully and deliberately and have profited and been unjustly enriched by sales they would not otherwise have made but for their unlawful conduct.

120.    By virtue of the foregoing, Defendants have caused BIC to suffer injuries for which it is entitled to recover compensatory damages including, but not limited to, BIC's lost profits.

121.    Defendants' acts are causing and continue to cause BIC irreparable harm in the nature of loss of control over its reputation and loss of substantial consumer goodwill.  This irreparable harm to BIC will continue, without any adequate remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

122.    BIC has been and will continue to be harmed by Defendants' conduct in an amount to be determined at trial.

123.    Defendants' acts constitute false advertising and deceptive acts and practices in violation of New York General Business Law §§ 349-350.

**SEVENTH CLAIM FOR RELIEF**
**Trademark Dilution and Injury to Business Reputation**
**New York Gen. Bus. Law § 360-1**

124.    BIC repeats, reiterates and re-alleges each and every allegation contained in Paragraphs 1 through 68 hereof as if fully set forth herein.

125.    BIC's Trade Dress is distinctive and famous within the meaning of New York General Business Law § 360-1, and were famous prior to the acts committed by Defendants discussed herein.

126.    Defendants' use of the Trade Dress has diluted, or is likely to dilute, and unless restrained will continue to dilute, the distinctive quality of the Trade Dress by destroying the exclusive association between the Trade Dress and BIC's lighters, or otherwise lessening the

capacity of the Trade Dress to exclusively identify BIC and its lights, and otherwise injure the business reputation of BIC.

127.     Defendants have acted willfully and deliberately and have profited and been unjustly enriched by sales they would not otherwise have made but for their unlawful conduct.

128.     By virtue of the foregoing, Defendants have caused BIC to suffer injuries for which it is entitled to recover compensatory damages including, but not limited to, BIC's lost profits.

129.     Defendants' acts are causing and continue to cause BIC irreparable harm in the nature of loss of control over its reputation and loss of substantial consumer goodwill.  This irreparable harm to BIC will continue, without any adequate remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

130.     BIC has been and will continue to be harmed by Defendants' conduct in an amount to be determined at trial.

131.     All of these acts constitute trademark dilution under New York General Business Law § 360-1.

## PRAYER FOR RELIEF

WHEREFORE, BIC respectfully requests that the Court:

A.     Grant judgment in favor of BIC and against Defendants on all of BIC's claims;

B.     Preliminarily and permanently enjoin and restrain Defendants, their officers, agents, subsidiaries, servants, partners, employees, attorneys and all others in active concert or participation with them, from:

a.   Making any use of the Trade Dress, or any designation of origin confusingly similar thereto, including offering to sell, selling, distributing, or importing

into the U.S. lighters incorporating the Trade Dress;

    b.   Infringing or diluting any of the Trade Dress;

    c.   Unfairly competing with BIC in the manufacture, importation, advertising, offering for sale, sale, shipment and/or distribution of lighters;

    d.   Disposing of, destroying, moving, secreting, relocating and/or transferring any and all of Defendants' stock of lighters incorporating the Trade Dress, without court direction;

    e.   Disposing of, destroying, moving, secreting, relocating and/or transferring any information, records, and/or documents in Defendants' possession pertaining to their purchase, importation, receipt, advertising, offering for sale, sale, shipment and/or distribution of lighters incorporating the Trade Dress; and,

    f.   Assisting, aiding or abetting any other person or business entity in engaging in or performing any of the aforementioned activities.

C.    Order Defendants to, at Defendants' expense, withdraw from the market, account for and properly destroy any and all products bearing the Trade Dress;

D.    Order Defendants, pursuant to 15 U.S.C. § 1116, to serve on BIC within thirty (30) days after service on Defendants of preliminary or permanent injunctive orders, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction.

E.    Order Defendants to account for, and pay over to BIC, Defendants' profits and all damages sustained by BIC;

F.    Increase the amount of damages and/or profits awarded to BIC, as provided by law;

G.      Award BIC such treble and punitive damages for Defendants' willful and intentional acts of unfair competition and infringement of BIC's rights that the Court shall deem just and proper;

H.      Award BIC the fees, costs and disbursements, and interest, expended in connection with any actions taken to investigate and confirm the claims made herein;

I.      Award BIC its reasonable attorney fees, costs, disbursements, and interest, as provided by law; and

J.      Granting such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

A.      BIC demands a trial by jury of all issues so triable.

Dated: December 5, 2018                   Respectfully Submitted,

                                          ORRICK, HERRINGTON & SUTCLIFFE LLP

                                          By:  */s/ Peter D. Vogl*
                                          _____

                                              Peter D. Vogl
                                              Christopher J. Cariello (Of Counsel)
                                              Briggs M. Wright
                                              pvogl@orrick.com
                                              ccariello@orrick.com
                                              bwright@orrick.com
                                              51 West 52nd Street
                                              New York, NY  10019-6142
                                              Telephone:  (212) 506-5000

                                              *Attorneys for Plaintiff BIC Corporation*